IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NORFOLK SOUTHERN RAILWAY COMPANY,

        Plaintiff,

v.                                           CIVIL ACTION NO. 2:17-cv-03854

CHARLESTON, BLUE CREEK AND
SANDERSON RAILWAY COMPANY, LLC, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Norfolk Southern Railway Company's ("NSRC") Motion for Default Judgment as to Defendants Charleston, Blue Creek and Sanderson Railway Company, LLC and Bob Carpenter Contracting, LLC, (ECF No. 7), and Defendant Bob Carpenter Contracting, LLC's ("BCC") Motion to Accept Answer Out of Time, (ECF No. 12).[1] For the reasons set forth below, the Court **DENIES** NSRC's motion for default judgment, (ECF No. 7), and **GRANTS** BCC's Motion to Accept Answer Out of Time, (ECF No. 12).

*I.    BACKGROUND*

NSRC brings this action seeking declaratory and injunctive relief against two limited liability companies that allegedly breached a lease agreement entered into by the parties after

---

[1] Defendant Charleston, Blue Creek and Sanderson Railway Company, LLC ("CBCS") filed a notice to join BCC's Motion to Accept Answer Out of Time, (*see* ECF No. 15), which the Court interprets as a request for the Court to similarly accept CBCS's separately filed answer out of time, (ECF No. 11).

1

removing portions of railway line from the leased property and using the line for logging purposes as opposed to "freight rail transportation purposes." (*See* ECF No. 1 at ¶¶ 28–30.) The parties signed two lease agreements on September 29, 2009, related to a stretch of railway line running through Kanawha County, West Virginia. (*Id.* at ¶ 17.) The lease agreement stemmed from Charleston, Blue Creek and Sanderson Railway Company, LLC's ("CBCS") desire "to re-establish rail service to customers located on the Line." (*Id.* at ¶ 19 (quoting ECF No. 1-2).) The lease preserved NSRC's future use of the line and allowed NSRC, during the lease's pendency, to "obtain trackage rights over the Line" from CBCS if it so desired. (*Id.* at ¶ 20; *see also id.* at ¶ 21 (providing that NSRC could "operate overhead trains over the Line" if a specified portion of the line "returned to service").)

Despite the lease's provisions providing NSRC the ability to use the line in the future for train operation, Defendants allegedly "removed the rail line, rail ties, and *have* converted the railway into a roadway for use by vehicle traffic." (*Id.* at ¶ 24 (emphasis in original) (citing ECF No. 1-4); *see also id.* at ¶ 27 (noting that the road is being used for logging trucks).) NSRC claims that despite notice of the alleged breach and a request that CBCS cease its unlawful conduct on the land, the destructive activity continues. (*See id.* at ¶¶ 31–33.) NSRC terminated the lease agreements via letter, received by CBCS on July 11, 2017, but this allegedly has not deterred Defendants from continuing the disputed activity on the property. (*Id.* at ¶¶ 32–34.)

Because of the supposed "irreparable injury to NSRC's property rights," (*id.* at ¶¶ 35–36), NSRC seeks a declaratory judgment "concerning the rights and responsibilities between NSRC and Defendants as to Defendants' lease and use of the NSRC's property including Defendants' destruction and removal of NSRC's track and rail line in this area . . . ." (*Id.* at ¶13.) The

2

company also requests an injunction "staying Defendants' continued use of the property in question in any manner and for any purpose other than as a railroad carrier, continued destruction and removal of NSRC's rail line, and the continued interference with NSRC's operations in this area . . . ." (*Id.* at ¶ 14.)

NSRC filed its Verified Complaint for Declaratory Judgment and Injunction in this Court on August 21, 2017. (ECF No. 1.) NSRC then filed its motion for default judgment on October 18, 2017. (ECF No. 7.) Defendants' counsel entered appearances and filed answers to the Complaint on October 26, 2017. (ECF Nos. 8, 9, 10, 11.) BCC filed its response to the motion for default judgment and its motion to accept answer out of time on October 27, 2017, (ECF No. 12), which CBCS joined on October 31, 2017, (ECF No. 15). NSRC filed its reply in support of the motion for default judgment and its response to Defendants' motion on November 8, 2017. (ECF No. 16.) The two motions are briefed and ripe for adjudication.

## II. DISCUSSION

As a preliminary matter, NSRC's motion for default judgment appears premature because the Clerk has not entered default in this case pursuant to Federal Rule of Civil Procedure 55(a). NSRC's motion initially cites to both Rules 55(a) and 55(b)(2) and requests that the Court enter default as to both Defendants, but the motion later seeks relief in the form of default judgment. Nonetheless, the distinction is irrelevant given the Court's denial of NSRC's motion.

Default judgment is available "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Under Federal Rule of Civil Procedure 55, which governs default judgments, "trial judges are vested with discretion, which

3

must be liberally exercised, in entering . . . [default] judgments and in providing relief therefrom." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). Rule 55(a) initially provides that when a party shows by affidavit that an opposing party has failed to plead or otherwise defend itself in litigation, the clerk of court must enter default against the defending party. "When a party 'has failed to plead or otherwise defend' against a pleading . . . , entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998) (citation omitted).

Even when a defendant has defaulted, this "does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *Lipenga v. Kambalame*, 219 F. Supp. 3d 517, 524 (D. Md. 2016) (citation omitted); *see also Geyer v. U.S. Van Lines*, No. 2:12–cv–04678, 2013 WL 65458, at *4 (S.D. W. Va. Jan. 4, 2013). Nevertheless, a court's order under Rule 55(b) may be construed as the initial entry of default if no prior default was entered by the clerk. *See Johnson*, 140 F.3d at 783. Under Rules 55(c) and 60(b), district courts have the discretion to set aside either an order of default or any subsequent default judgment, but these rules are inapposite if neither default nor default judgment has been entered. *See Davis v. Parkhill-Goodloe*, 302 F.2d 489, 495 (5th Cir. 1962). The Fourth Circuit has also "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted).

According to NSRC's motion for default judgment and supported by its attached exhibits, NSRC served both Defendants in this case through the West Virginia Secretary of State. (ECF No. 7 at 2; *see also* ECF No. 7-1.) The Secretary of State accepted service on behalf of

4

Defendants and forwarded the summons and Complaint to them in accordance with state law and Federal Rule of Civil Procedure 4(e)(1). (ECF No. 7 at 2; *see also* ECF No. 7-2.) Defendants' responsive pleading was due by September 29, 2017, but after BCC's insurance carrier contacted NSRC's attorney on September 29 requesting an extension of the time to respond, NSRC agreed to extend the deadline to October 16, 2017. (*See* ECF No. 7 at 2–3; *see also* ECF Nos. 7-3, 7-4.) After the passage of the stipulated extension, NSRC filed the current motion on October 18, 2017, requesting entry of default judgment against Defendants, injunctive relief, and costs and fees. (*See* ECF No. 7 at 3.)

BCC's response to the motion, which CBCS joins, (*see* ECF No. 15), notes that BCC's insurance carrier did not engage the appearing counsel on BCC's behalf until October 25, 2017, over a week after the stipulated deadline to respond to the Complaint. (*See* ECF No. 13 at 1–2.) BCC requested that NSRC withdraw its motion for default judgment to no avail, and BCC filed its answer "as quickly as possible on October 26, 2017 . . . ." (*Id.* at 2.) Relying on the liberal standard of Federal Rule of Civil Procedure 55(c), BCC notes that it has proffered facts that support a meritorious defense, the delay was outside the control of BCC, the ten-day delay is not prejudicial to NSRC, BCC has not been dilatory, and lesser sanctions than default exist. (*See id.* at 5–6.) For those reasons, BCC opposes the entry of default judgment and moves for the Court to accept its answer out of time.

The reply in support of the motion for default disputes Defendants' assertion of a meritorious defense to the claims set forth in the Complaint. NSRC maintains that in violation of a lease agreement signed by NSRC and CBCS in 2009, CBCS did not use the track for its intended purposes. (*See* ECF No. 16 at 4.) Contrary to the lease's provisions, CBCS failed to "maintain

5

and surrender at the end of the lease 'a continuous line-of-railroad between the end points of the Line.'" (*Id.* (quoting ECF No. 1-2 at 5)).) NSRC claims that the lease provided it a limited right of use over the line in question and that CBCS was obliged to maintain the track accordingly in the event NSRC exercised that right. (*See id.*) The reply argues that CBCS's actions of "destroy[ing] the property that is the subject of the lease . . . stretches the bounds of logic and certainly does not rise to the level of being a meritorious defense." (*Id.* at 5.) NSRC notes that it terminated the lease on July 7, 2017, after several unsuccessful attempts to get CBCS to cease its activities on the property. (*See id.* & n.4.)

First, the Court notes that the parties' arguments regarding whether a default should be set aside and whether Defendants have a meritorious defense are misplaced. There has been no default entered in this case; the issue before the Court now is whether to grant an initial default. As such, any discussion as to the merits of Defendants' defenses to the Complaint, which plays into the Rule 55(c) analysis for setting aside a default already entered, is irrelevant. Further, the plethora of cases cited by both parties for support in the briefing are largely inapposite as they analyze situations in which a party is seeking to set aside either a default or default judgment. Thus, those cases do not reflect the circumstances currently before the Court.

It appears that much of the delay in Defendants' responses to the Complaint, including the late appearances entered by their counsel, is not attributable to Defendants themselves. The delay, if blame is traceable, seems to stem from the Defendants' insurance carrier, which sought an extension of the time to answer to make a coverage determination. NSRC stipulated to an initial extension of the deadline, but the insurance carrier supposedly did not obtain counsel for Defendants during that time. While the parties bicker about faulty communication between

counsel around the time the motion for default judgment was filed, a conflict of interest allegedly prevented the originally obtained potential counsel from taking the case, resulting in further delay. The Court is not pleased that attorney appearances were made over a week past the stipulated deadline to answer, but Defendants promptly filed answers thereafter and have since acted willing and able to present their defenses to NSRC's Complaint. As such, the Court notes that its discretion to grant additional time for action even when default is available becomes particularly relevant when the party "appears and indicates a desire to contest the action," 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2682 (4th ed. 2016), and there is an "absence of prejudice to the movant." *Geyer*, 2013 WL 654458, at *4.

In this case, the Court does not view Defendants' actions as so dilatory to necessitate default. Although filed over a week outside the stipulated deadline, Defendants' answers and motion to accept answer out of time convey to the Court a desire to defend against NSRC's Complaint. Further, the parties met for their Rule 26(f) planning meeting and discovery is underway, which both highlight Defendants' readiness to proceed with their case. Employing the Court's discretion to allow Defendants additional time to answer is consistent with the Fourth Circuit's "strong favor for resolving cases on their merits." *U.S. Foodservice, Inc. v. Donahue*, 764 F. Supp. 2d 816, 819 (S.D. W. Va. 2011). The Court finds little prejudice to NSRC, especially given the Court's "wariness in entering default judgment on a claim for declaratory relief." *See Toler v. Gov't Emps. Ins. Co.*, No. 2:14–cv–29582, 2015 WL 1431247, at *2 (S.D. W. Va. Mar. 27, 2015); *see also Teachers Ins. Co. v. Prather*, No. 2:11–cv–00397, 2012 WL 90095, at *2 (S.D. W. Va. Jan. 11, 2012). Therefore, the Court finds good cause for refusing to enter default and for accepting Defendants' answers out of time. Finally, while Defendants' answers were originally

7

untimely in this case, the remaining deadlines have been explicitly set out in the Scheduling Order, (ECF No. 18), and the Court expects all parties to meet them.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** BCC's Motion to Accept Answer Out of Time, (ECF No. 12), and **DENIES** NSCR's motion for default judgment, (ECF No. 7).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 6, 2018

THOMAS E. JOHNSTON, CHIEF JUDGE